# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 15-CV-2762 (JFB)(AKT)

DARIN POOLE,

Plaintiff,

VERSUS

NASSAU COUNTY ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
March 21, 2016

JOSEPH F. BIANCO, District Judge:

On April 30, 2015, plaintiff Darin Poole ("Poole" or "plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action against defendants Nassau County, Nassau County Department of Health, Nassau County Sheriff's Department, Nassau County Correctional Center ("NCCC," s/h/a Nassau County Jail), (collectively, "County Defendants"), and New York State (s/h/a N.Y. State). Plaintiff alleges claims under Section 1983 concerning his medical care and the conditions of his confinement while incarcerated at the NCCC.

County Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and defendant New York State moves to dismiss the complaint pursuant to Rule 12(b)(1) as well as Rule 12(b)(6).

For the reasons discussed below, the County Defendants' motion is denied, and New York State's motion is granted.

I. BACKGROUND

A. Facts

The following facts are taken from the plaintiff's complaint (Compl.) and are not findings of fact by the Court. Instead, the Court will assume the facts to be true and, for purposes of the pending motions to dismiss, will construe them in a light most favorable to the plaintiff, the non-moving party.

Plaintiff alleges that, on April 9, 2015, he was served elbow pasta with meat sauce, along with the other inmates. (Compl. ¶ IV.) He alleges that, after eating, he "became nausheated (sic) and very sick" and felt like his stomach "was going to explode" due to his pain and cramps. (*Id.*) Plaintiff alleges that he "never received a response from medical, or let alone any medical treatment at

1

all" from April 10, 2015, to April 16, 2015. (*Id.* at ¶ IV.A.)

Plaintiff alleges that he told an officer that he "was in serious pain," believed that he had food poisoning, and needed to go to emergency medical. (*Id.* at Attach. 1.) Plaintiff alleges that the officer told him that "they weren't calling medical unless [plaintiff] was layed (sic) out cold on the floor," and directed plaintiff to fill out a sick call form, which plaintiff did. (*Id.*) Plaintiff then alleges that he told another officer who was doing rounds that he wanted to go to the hospital because he had food poisoning, but that the officer told him that "they weren't going to call anyone unless [plaintiff] was layed (sic) out not breathing at all and that was the only way [he] would go to the hospital." (*Id.* at Attach. 2.) Plaintiff alleges that he was unable to make himself throw up, and remained in his cell for two days with "constant stomach cramps and serious pain," unable to eat. (*Id.*)

Plaintiff alleges that he "used the bathroom a total of 23 times," and that the first time, on April 12, 2015, there was "blood in [his] stool with dead small ants and roaches from food poisoning." (*Id.* IV.A.; *see also id.* at Attachs. 2-3.) Plaintiff alleges that he asked an officer to come to his cell to "verify [his] claim and report it to medical so medical could get [him] to the emergency room at the hospital but he refuse (sic) to come up." (*Id.* at Attach. 3.) Plaintiff alleges that the officer told him to fill out another sick call and put in a grievance, and by that time, plaintiff had put in a total of three sick calls and two grievances. (*Id.*)

Plaintiff alleges that, one or two days later, he was called down for a sick call and seen by Dr. Sanchez for the unrelated reason of having his blood pressure checked. (*Id.* at Attach. 4.) Plaintiff alleges that he explained his illness to Dr. Sanchez, who asked for a stool sample, which contained ants and roaches. (*Id.*) Plaintiff alleges that Dr. Sanchez told him that he would get him something for his stomach pain within a few days, but that plaintiff still had not heard anything back by April 22, 2015, nor was he sent to the hospital or given any other treatment. (*Id.*)

Plaintiff also alleges that he told Dr. Sanchez that he wanted the "built up fluid on his left knee" drained because he could barely walk, but that Dr. Sanchez never got back to him after taking X-rays. (*Id.*) Plaintiff alleges that as a result, his knee swelled to the size of a softball. (*Id.*)

Plaintiff also includes an allegation that NCCC is "cheating all inmates out of there (sic) rec time" because officers tell inmates that if they "don't go outside when the call outside rec then [they] must lock in." (*Id.* at Attach. 5.) Plaintiff alleges that "inmates are forced to go in cold, wet weather" or risk losing their rec time. (*Id.*)

### B. Procedural History

Plaintiff commenced this action on April 30, 2015. On July 14, 2015, New York State filed a motion to dismiss plaintiff's complaint. On September 4, 2015, the County Defendants filed their motion to dismiss. On September 21, 2015, plaintiff filed a letter in opposition. On October 21, 2015, County Defendants filed a letter requesting their motion be submitted as unopposed.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.

2

2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id*. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Where, as here, the plaintiff is proceeding *pro se*, "a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

### III. DISCUSSION

#### A. Section 1983 Claims

Plaintiff brings several claims under Section 1983 against the defendants.[1] To

---

[1] Plaintiff asserts Section 1983 claims against the NCCC, Nassau County Sheriff's Department, and the Nassau County Department of Health. The Court notes, however, that these entities are "administrative arms" of a municipality, Nassau County, and accordingly, cannot be sued. *See, e.g.*, *Melendez v. Nassau Cty.*, No. 10-CV-2516 (SJF)(WDW), 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010) (dismissing plaintiff's claims against the Nassau County Sherriff's Department of Correction and Nassau County Correctional Center because those entities are "administrative arms of Nassau County, and therefore are not suable entities"); *see also Joseph v. Nassau Cty. Corr. Ctr.*, No. 12-CV-4414 (JFB)(AKT), 2013 WL 1702162, at *3 (E.D.N.Y. Apr. 19, 2013) (dismissing claims against Nassau County Correctional Center and Nassau County Sheriff's Department because "both entities are 'administrative arms' of a municipality, Nassau County, and accordingly, cannot be sued."). "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot

prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Plaintiff brings two separate claims under Section 1983 alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment.[2] First, plaintiff alleges deliberate indifference to his medical needs. Second, plaintiff alleges that he was served contaminated meals. The Court concludes that plaintiff has adequately stated a claim for cruel and unusual punishment regarding his claims for deliberate indifference and inadequate food preparation.

1. Deliberate Indifference

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "There are two elements to a claim of deliberate indifference to a serious medical condition." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and internal quotation marks omitted). Analyzing this objective requirement requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is

---

sue or be sued." *David v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). Thus, plaintiff cannot raise a plausible Section 1983 claim against the NCCC, Nassau County Sheriff's Department, or the Nassau County Department of Health, and such claims are dismissed.

[2] To the extent that plaintiff attempts to raise a separate claim for the deprivation of recreation time, that allegation alone would be insufficient as a matter of law to raise an Eighth Amendment issue. "Although a prisoner may satisfy the objective component of the Eighth Amendment test by showing that he was denied meaningful exercise for a substantial period of time, . . . temporary denials of exercise may be constitutional." *Davidson v. Coughlin*, 968 F. Supp. 121, 129 (S.D.N.Y. 1997) (internal citations omitted). Further, "there is no constitutional right to exercise indoors." *Patterson v. City of New York*, No. 11-CV-7976 (DLC), 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012). In *Anderson v. Coughlin*, 757 F.2d 33 (2d Cir. 1985), the Second Circuit affirmed the grant of summary judgment to defendants where the prisoner plaintiffs requested an indoor exercise space in addition to their outside space. The Second Circuit noted that while "[n]o doubt indoor exercise space would be useful to assure opportunity for vigorous exercise during inclement weather, . . . an occasional delay without exercise when weather conditions preclude outdoor activity . . . is [not] cruel and unusual punishment. With outdoor recreation space provided and opportunity for its daily use assured, the absence of additional exercise space indoors . . . is not a denial of constitutional rights." 757 F.2d at 36; *see also Patterson*, 2012 WL 3264354, at *7 (granting motion to dismiss plaintiff's claim that detainees were "made to have outdoor recreation even in heavy snow and rain"); *Johnakin v. NYC Dep't of Corr.*, No. 11-CV-4807 (SLT)(LB), 2013 WL 5519998, at *14 (E.D.N.Y. Sept. 30, 2013) (granting motion to dismiss plaintiff's claim that inmates were unable to exercise in the indoor gym during bad weather); *Simmons v. Cripps*, No. 12-CV-1061 (PAC)(DF), 2013 WL 1290268, at *17 (S.D.N.Y. Feb. 15, 2013), *report and recommendation adopted*, No. 12-CV-1061 (PAC)(DF), 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013) (dismissing plaintiff's claim that detainees were "denied access to the gym during inclement weather"). Thus, because plaintiff does not have a constitutional right to exercise indoors, any claim based upon not being able to have indoor recreation time would not be cognizable.

inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. To meet this requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has "presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: '(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain.'" *Morales v. Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (quoting *Brock*, 315 F.3d at 162) (additional internal quotation marks omitted); *see also Griffin v. Amatucci*, No. 11-CV-1125 (MAD)(TWD), 2014 WL 2779305, at *4 (N.D.N.Y. June 19, 2014), *rev'd in part on other grounds*, 611 F. App'x 732 (2d Cir. 2015) (same).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Under the second prong, the question is whether defendants "knew of and disregarded an excessive risk to [a plaintiff's] health or safety and that [they were] both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (citation, alterations, and internal quotation marks omitted). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citation and internal quotation marks omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness" and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citation and internal quotation marks omitted). In contrast, mere negligence is not enough to state a claim for deliberate indifference. *See Walker*, 717 F.3d at 125; *Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eight Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Banks v. Annucci*, 48 F. Supp. 3d 394, 408 (N.D.N.Y. 2014).

Here, the Court has liberally construed plaintiff's complaint – taking all of his allegations as true and construing them in the light most favorable to plaintiff – and, for the reasons set forth below, cannot conclude at this juncture, as a matter of law, that he has failed to state a claim under Section 1983 for deliberate indifference to serious medical needs.

With respect to the objective prong of plaintiff's deliberate indifference claim, plaintiff alleges that he suffered food poisoning, which made him feel as if his stomach "was going to explode" due to his pain and cramps. (Compl. ¶ IV.) Plaintiff alleges that he "used the bathroom a total of 23 times," and that the first time, on April 12, 2015, there was "blood in [his] stool with dead small ants and roaches from food

poisoning." (*Id.* ¶ IV.A.; *see also id.* at Attachs. 2-3.) Taken as true, plaintiff's claim for food poisoning provides a plausible claim that is sufficiently serious to meet the objective requirement of a deliberate indifference claim. *See, e.g.*, *Lewis v. Zon*, 920 F. Supp. 2d 379, 389-90 (W.D.N.Y. 2013) (finding allegations that plaintiff complained of vomiting, abdominal cramps, diarrhea, and severe pain were sufficient to raise a question of fact as to deliberate indifference claim); *Alexander v. Coughlin*, No. CV 90-3231 (RR), 1991 WL 150674, at *2 (E.D.N.Y. July 26, 1991) (finding plaintiff adequately pled deliberate indifference regarding failure to treat his diarrhea condition).

With respect to the subjective prong, plaintiff alleges that he told an officer that he "was in serious pain," believed that he had food poisoning, and needed to go to emergency medical, but that the officer told him that "they weren't calling medical unless [plaintiff] was layed (sic) out cold on the floor," and directed plaintiff to fill out a sick call form, which plaintiff did. (Compl. at Attach. 1.) Plaintiff then alleges that he told another officer who was doing rounds that he wanted to go to the hospital because he had food poisoning, but that the officer told him that "they weren't going to call anyone unless [plaintiff] was layed (sic) out not breathing at all and that was the only way [he] would go to the hospital." (*Id.* at Attach. 2.) Plaintiff also alleges that he asked an officer to come to his cell to "verify [his] claim and report it to medical so medical could get [him] to the emergency room at the hospital but he refuse (sic) to come up." (*Id.* at Attach. 3.) Plaintiff alleges that the officer told him to fill out another sick call and put in a grievance, and by that time, he had put in a total of three sick calls and two grievances. (*Id.*) Drawing all reasonable inferences in plaintiff's favor, plaintiff has plausibly alleged that County Defendants knew of his food poisoning, but decided not to provide him with medical treatment, thus, consciously disregarding a substantial risk of serious harm to plaintiff. *See, e.g.*, *Perez v. Keysor*, No. 9:10-CV-0518 (LEK)(CFH), 2013 WL 5493932, at *19 (N.D.N.Y. Sept. 30, 2013) (finding that plaintiff demonstrated that a factual issue existed with respect to the subjective prong of his medical indifference claim, precluding summary judgment, where plaintiff alleged that he told guards of his medical need and "attempt[ed] to receive medical assistance from patrolling officers; however, they disregarded his requests.").[3]

Accordingly, plaintiff has stated a plausible Section 1983 claim based upon deliberate indifference to a serious medical need.

2. Contaminated Food

Plaintiff also claims that he was subjected to cruel and unusual punishment because he was served contaminated food.

A prisoner alleging an Eighth Amendment violation based on contaminated food must demonstrate both an "objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable

---

[3] County Defendants argue that plaintiff failed to allege a deliberate indifference claim because plaintiff alleges that he saw a doctor, Dr. Sanchez, thus demonstrating that "County Defendants administered medical care instead of consciously disregarding Plaintiff's medical treatment." (County Defs.' Mem. of Law at 5.) However, plaintiff alleges that he was seen by Dr. Sanchez for the "unrelated reason" of having his blood pressure checked. (Compl. at Attach 4.) Further, plaintiff alleges that although he told Dr. Sanchez of his symptoms and gave Dr. Sanchez a stool sample, Dr. Sanchez did not provide him any treatment. (*Id.*) Such allegations do not provide a basis for dismissing plaintiff's claim at this juncture.

state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective requirement "'does not mandate comfortable prisons,' [but] prisoners may not be denied 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). Thus, the Eighth Amendment requires prisoners receive their "basic human needs— *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation and internal quotation marks omitted). Prison officials also may not "pose an unreasonable risk of serious damage to [prisoners'] future health." *Id.* at 35. Regarding the subjective requirement, "'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Phelps*, 308 F.3d at 185-86 (quoting *Farmer*, 511 U.S. at 837).

"Courts in the Second Circuit have recognized that 'depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment.'" *Varricchio v. Cty. of Nassau*, 702 F. Supp. 2d 40, 56 (E.D.N.Y. 2010) (quoting *Quintana v. McCoy*, No. 9:03-CV-0924, 2006 WL 2827673, at *6 (N.D.N.Y. Sept. 29, 2006)); *see also Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (same); *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir. 1983) (per curiam) (concluding that the Eighth Amendment requires prisoners to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it") (quotation omitted); *Thaxton v. Simmons*, No. 9:10-CV-1318 (MAD)(RFT), 2012 WL 360104, at *4 (N.D.N.Y. Jan. 5, 2012), *report and recommendation adopted*, No. 9:10-CV-1318 (MAD)(RFT), 2012 WL 360141 (N.D.N.Y. Feb. 2, 2012) (finding that plaintiff stated an Eighth Amendment violation where plaintiff "ingested, but spit out, the piece of metal, which caused injuries to his tongue and cheek" that "developed into dental pain and numbness to the right side of his face").

Here, plaintiff's complaint alleges sufficient facts to plead a claim of cruel and unusual punishment due to the conditions of confinement. Plaintiff alleges that he suffered food poisoning because he was served food that contained dead small ants and roaches. (Compl. ¶ IV.A.; *id.* at Attach. 3.) Plaintiff alleges that this resulted in constant stomach cramps and serious pain for two days. (*Id.* at Attach. 2.) At this stage of the litigation, taking plaintiff's allegations as true, he has stated enough facts to plausibly claim that his food was tampered with and caused palpable injury to him.

Although plaintiff has not specifically alleged that the County Defendants had knowledge of the conditions under which the food was prepared, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003). Here, plaintiff claims that the food contained dead ants and roaches and, if true, a reasonable inference could be drawn that the risk of contamination was obvious. Thus, at the motion to dismiss stage of the litigation, plaintiff has alleged sufficient facts to satisfy the subjective prong of his claim based on the obvious risk of the alleged contamination of food in this case.

Accordingly, plaintiff has stated a plausible Section 1983 claim based on contaminated food that survives County Defendants' motion to dismiss.

B. Failure to Exhaust

County Defendants argue that plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA") because plaintiff failed to exhaust available administrative remedies at the NCCC prior to commencing this action.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 88-90).

Prior to *Woodford*, the Second Circuit

> recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result, or if the inmate has been deterred by intimidation; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance.

*Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (internal citations omitted); *see also Davis v. New York*, 311 F. App'x 397, 399 (2d Cir. 2009) (citing *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004)). Initially, it was unclear whether the above-discussed considerations would be impacted by *Woodford*. *See, e.g.*, *Reynoso*, 238 F. App'x at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether *Woodford* has bearing on them."); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect

*Woodford* has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-*Woodford* case law."). However, even after *Woodford*, the Second Circuit has continued to hold that an inmate's failure to comply with the exhaustion requirement may be excused on these grounds. *See Messa*, 652 F.3d 305, 309 (2d Cir. 2011) (citing *Hemphill* factors).

As the Supreme Court has held, exhaustion is an affirmative defense. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *see also Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (Report and Recommendation) ("Failure to exhaust administrative remedies under the PLRA is an affirmative defense, . . . and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

Plaintiff acknowledges that the NCCC had a grievance procedure in place, and alleges that he filed two grievances, neither of which was answered. (Compl. ¶ II.) County Defendants argue that plaintiff "failed to exhaust his administrative remedies prior to initiating the present action by not taking his grievance to the highest level of administrative review. Plaintiff merely states that he filed two grievances and none were answered although he concedes that he met with Dr. Sanchez." (County Defs.' Mem. of Law at 8.) In his letter in opposition, plaintiff argues that "defendants buried [his] paper trail" and that he did in fact exhaust his administrative remedies. (Pl.'s Opp'n.)

Construing the allegations in the complaint and drawing all reasonable inferences in plaintiff's favor, as the Court must on a motion to dismiss, the Court cannot conclude on this record that plaintiff failed to exhaust his administrative remedies. *See, e.g.*, *Moschetto v. Nassau Cty. Sheriff*, No. 10-CV-1971 (JFB)(AKT), 2011 WL 2457927, at *4 n.3 (E.D.N.Y. June 16, 2011). Thus, defendants' motion to dismiss for a failure to allege exhaustion is dismissed without prejudice to renewal at a later stage in the litigation once discovery on this issue is complete.

C. Defendant New York State

New York State moved to dismiss the complaint under Rule 12(b)(1) on the grounds that plaintiff's action against them is barred by the Eleventh Amendment. Because New York State is entitled to Eleventh Amendment immunity, the claims against it must be dismissed.

The Eleventh Amendment states that the "[j]udicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, the Eleventh Amendment bars federal suits against state governments by a state's citizens, unless that state "waive[s] its . . . immunity from suit in a federal court," *Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613, 618 (2002), or Congress "abrogate[s] such immunity . . . [by] mak[ing] its intention to abrogate unmistakably clear in the language of [a federal] statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment," *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).

New York "has not waived its immunity as to suits seeking either monetary or injunctive relief in federal court." *Goonewardena v. New York*, 475 F. Supp. 2d.

310, 322 (S.D.N.Y. 2007) (citing N.Y. Court of Claims Act § 8 (McKinney 2006)). In addition, Congress has not abrogated such immunity. Accordingly, New York State is entitled to Eleventh Amendment immunity, and the claims against it must be dismissed. *See, e.g.*, *Marmot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (affirming dismissal of Section 1983 action against New York state agency and stating that "[i]t is well-established that New York has not consented to § 1983 suits in federal court").

## IV. CONCLUSION

For the foregoing reasons, County Defendants' motion to dismiss is denied. However, all claims against Nassau County Correctional Center, Nassau County Sheriff's Department, and the Nassau County Department of Health are dismissed. Defendant New York State's motion to dismiss pursuant to Rule 12(b)(1) is granted, and the claims against it are dismissed.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  March 21, 2016
        Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. County Defendants are represented by Thomas Lai, Nassau County Attorney Office, 1 West Street, Mineola, NY 11501. New York State is represented by Lori L. Pack, Office of the New York State Attorney General, 300 Motor Parkway, Suite 205, Hauppauge, NY 11788.